UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KEVIN DEVON BRIGGS, #447282,        )
                                    )
            Plaintiff,              )    Case No. 1:13-cv-1280
                                    )
v.                                  )    Honorable Paul L. Maloney
                                    )
JAMES PLICHTA, et al.,              )
                                    )
            Defendants.             )
_____)

# REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff is an inmate at the Michigan Reformatory. (ECF No. 93). His complaint arises out of conditions of his confinement on July 5, 2010, at the Earnest C. Brooks Correctional Facility (LRF). The defendants are three Michigan Department of Corrections (MDOC) employees at LRF: Lieutenant James Plichta, Sergeant Christopher Wilks, and Corrections Officer David Kennedy.

Plaintiff alleges that, on July 5, 2010, defendants Wilks and Kennedy used excessive force against him, that defendant Plichta failed to intervene, and that all three defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause. He asks that the Court, in its discretion, exercise supplemental jurisdiction over his

purported state law claims against defendants for assault and battery. Plaintiff seeks an award of damages against defendants in their individual capacities.[1]

The matter is before the Court on defendants' motion for summary judgment. (ECF No. 85). Plaintiff has filed his response. (ECF No. 90-91). For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted and that judgment be entered in defendants' favor on all plaintiff's federal claims. I recommend that the Court, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's purported state law claims.

## **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See*

---

[1] All other claims have been dismissed. (ECF No. 35, 87).

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of her pleadings. *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012); *see also Scadden v. Warner*, 677 F. App'x 996, 1000 (6th Cir. 2017). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016).

## Preliminary Matters

A. Verification

Plaintiff asks the Court to "acknowledge and enforce" his verified complaint. (Plf. Brief at 1, 6, ECF No. 91, PageID. 454, 460). Plaintiff's complaint is not properly verified. (*see* ECF No. 1, PageID.13). Plaintiff has interjected the limitations that the allegations are made on information and belief. (*Id.*). "[S]tatements made on belief or on information and belief, cannot be utilized on a summary-judgment motion" and here, the Court cannot discern what statements plaintiff made on personal knowledge and under penalty of perjury and those he made on mere information and belief. *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015). Thus, plaintiff's complaint is not a verified complaint that could be considered as his affidavit in opposition to defendants' motion. *See, e.g., Brown v. City of Grand Rapids*, No. 1:13-cv-964, 2016 WL 4920144, at *3 n.3 (W.D. Mich. June 13, 2016); *Naumovski v. Federal Nat'l Mort. Ass'n*, No. 15-11466, 2016 WL 949220, at *2 (E.D. Mich. Mar. 14, 2016).

"Verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x 656, 662 (6th Cir. 2009); *Simmons v. Rogers*, No. 1:14-cv-1242, 2017 WL 1179376, at * 1 (W.D. Mich. Mar. 30, 2017). "Arguments in parties' briefs are not evidence." *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).

B.      Plaintiff's Request for Spoliation Sanctions

Section IV of plaintiff's brief in response to defendants' motion for summary judgement is captioned as follows: "Should This Court Find That Defendants Did Not Follow Their Own Rules and Regulations and Spoliated Video Evidence and Grant Mr. Briggs an Award of Damages?" (Plf. Brief at 14, ECF No. 91, PageID.468). Plaintiff argues that defendants should have preserved July 5, 2010, video footage from an overhead mounted camera in LRF's segregation unit and he claims entitlement to "spoliation sanctions." (*Id.* at 16-17, PageID.470-71). Plaintiff's request for sanctions is denied. Plaintiff did not file a separate motion for sanctions and a supporting brief as required by FED. R. CIV. P. 7(b)(1) and W.D. MICH. LCIVR 7.1(a). Burying his request for relief in the middle of a brief does not suffice. Thus, plaintiff's request for spoliation sanctions is not properly before the Court.

Further, assuming that the issue had been properly framed for decision, plaintiff would not be entitled to the relief he requests. Plaintiff cites nothing that would entitle him to "damages" for defendants alleged failure to preserve a July 5, 2010, video recording.

"District courts have broad discretion to craft proper sanctions for the spoliation of evidence." *Adkins v. Wolever*, 692 F.3d 499, 503 (6th Cir. 2012). A party seeking an adverse inference instruction based on the destruction of evidence must establish: (1) that the party having control over the evidence had an obligation to preserve it at the time that it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or

defense such that a reasonable trier of fact could find that it would support that claim or defense. *Id.* at 504-04; *see also Beaven v. United States Dep't of Justice*, 622 F.3d 540, 653-54 (6th Cir. 2010). Plaintiff satisfies none of these requirements.

There is no evidence that defendants had control over the video evidence or that they had an obligation to preserve it at the time that it was destroyed. Plaintiff has simply demonstrated that there is no video evidence supporting his claims against defendants. During discovery, plaintiff asked defendants to produce "the audio and video recording recorded by the LRF correctional officers on July 5, 2010, in the segregation cell unit cell #9 at approximately 8:30 a.m. - 10:00 a.m., at which time Plaintiff was being held." (ECF No. 56-2, PageID.253). On December 29, 2015, he received the following response: "There was no video of the incident on July 5, 2010. The Defendants considered this to be an emergency situation so no one retrieved the video camera. There is no video available from the overhead mounted cameras for July 5, 2010." (*Id.*).

Plaintiff's reliance on MDOC Policy Directive 03.03.105 ¶ Z (Plf. Brief at 15, ECF No. 91, PageID.469) is misplaced because that policy directive did not go into effect until April 9, 2012 (*see* ECF No. 91-2, PageID.489), almost two years after the date at issue. Moreover, even if the policy directive had been in effect during a relevant time frame, it would not support plaintiff's argument. Assuming that a video recording is within the category of physical evidence other than photographs, paragraph Z of the April 9, 2012, policy directive states that such evidence shall be retained for at least

90 calendar days after the hearing or until litigation is completed if a lawsuit is filed.[2] (*Id.* at PageID.490). Plaintiff's hearing was held on July 23, 2010. (ECF No. 91-2, PageID.493). The 90-day period ended on October 21, 2010. This lawsuit was not pending on October 21, 2010. Plaintiff waited until November 25, 2013, to file this lawsuit. (ECF No. 1).

Plaintiff argues that the portion of his July 27, 2010, grievance requesting that a copy of a video allegedly "video taped by the staff" be "kept for prosecution" (Plf. Brief at 14, ECF No. 91, PageID.468) (citing ECF No. 20-3, PageID.105) somehow put defendants on notice that all videos associated with his later-filed November 25, 2013, complaint should be held. First of all, this grievance would not have alerted anyone to preserve evidence from a hallway security camera. In this grievance and in the complaint that he filed years later, plaintiff alleged that the use of excessive force occurred inside segregation cell # 9. (ECF No. 1, PageID.6; ECF No. 20-3, PageID.105). In addition, the Sixth Circuit has cautioned that federal courts should avoid interfering with the ability of prison administrators to manage their institutions. *See Adkins*, 692 F.3d at 506. Plaintiff has not cited and I am not aware of any case finding that a mere grievance suffices to create a duty to preserve video evidence. Prisoner grievances threatening litigation are very common. There is no evidence that defendants Plichta, Wilks, or Kennedy had the ability to access video footage from a segregation unit

---

[2]Although plaintiff has presented evidence that he filed a request for rehearing regarding on his misconduct convictions and that his request was denied on September 22, 2010 (ECF No. 91-2, PageID.491), his request for reconsideration of misconduct convictions was not a lawsuit.

hallway camera, much less any role in destruction of purported video evidence. There is no evidence regarding LRF's video retention policy or that whatever happened with regard to images purportedly captured by a hallway camera in LCF's segregation unit on July 5, 2010, violated such a policy. *Cf. Adkins*, 692 F.3d at 501-07.

Plaintiff's argument that his June 1, 2016, deposition testimony regarding video evidence should have provided adequate notice to defendants that they were required to retain video evidence (Plf. Brief at 16, ECF No. 91, PageID.470) requires very little discussion. There is no evidence that any video evidence relevant to plaintiff's claims existed on June 1, 2016.

Accordingly, I find that plaintiff's request for spoliation sanctions is not properly before the Court. Further, assuming that the issue had been properly framed for decision, plaintiff would not be entitled to the relief he requests.

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate held in custody of the Michigan Department of Corrections (MDOC) on his criminal convictions. On July 5, 2010, plaintiff was an inmate at the Earnest C. Brooks Correctional Facility (LRF). (Plf. Dep. at 15, ECF No. 79-1, PageID.352). The defendants are three MDOC employees at LRF: Lieutenant James Plichta, Sergeant Christopher Wilks, and Corrections Officer David Kennedy. Plaintiff testified that he had no interaction with Lieutenant Plichta, Sergeant Wilks, or Officer Kennedy before July 5, 2010. (Plf. Dep. at 13-14, ECF No. 79-1, PageID.351-52).

Plaintiff is diabetic. (*Id.* at 16, PageID.352). On the morning of July 5, 2010, plaintiff was in the morning insulin line at LRF's the health care unit. At that time, LRF's diabetic inmates were permitted to check their own blood sugar level. Then, then the inmate was given the syringe and the bottle of insulin. The prisoner was allowed to put the syringe into the bottle, draw up his insulin, and then inject himself. (*Id.* at 16-19, PageID.352-53). On the morning in question, plaintiff reported his blood sugar level and he showed the nurse the reading on his glucometer. He then drew up insulin into a syringe. Before he injected himself, however, plaintiff reported that he had drawn up the entire syringe and stated that he was not going to eat until he saw the warden. Plaintiff then injected himself in the abdomen and he "threw the Lantus bottle and syringe on the table top and walked off." (ECF No. 86-1, PageID.418). Plaintiff testified at his deposition that he had no idea how someone in healthcare came to the conclusion that he had taken too much insulin. (Plf. Dep. at 25, ECF No. 79-1, PageID.354).

Plaintiff was moved from his regular cell to LCF's segregation cell # 9 for medical observation. (*Id.* at 21, PageID.353). Once secured inside that cell, plaintiff was directed to take off his regular prison clothing and put on a "psychology suit" or "bam bam suit"[3] designed to prevent suicidal prisoners from harming themselves. (Plf.

---

[3] "'[B]am bam' gowns are so named for the Flintstones character 'Bam Bam.' The name refers to the fact that the [prison's] bam bam gowns are flimsy, one-piece gowns that are designed to tear apart upon the exertion of any pressure so that they cannot be used in a suicide attempt." *Cooper v. County of Washtenaw*, 222 F. App'x 459, 462 n.1 (6th Cir. 2007); *see also Comstock v. McCrary*, 273 F.3d 693, 698-99 (6th Cir. 2001).

*Id.* at 25, PageID.354). A steel panel had been removed from the cell door and it was replaced with a steel screen which allowed an officer posted outside the cell's door to watch plaintiff.[4] (*Id.* at 25-26, PageID.355). Dr. Abdellatif ordered that plaintiff's blood pressure be checked every hour. Plaintiff did not comply. He was observed lying on a bed and it is undisputed that he refused to allow nurses to check his blood sugar.[5] (ECF No. 86-1, PageID.418-26; Plf. Dep. at 26, ECF No. 79-1, PageID.355).

It is undisputed that plaintiff was not responsive when the medical care providers tried to check his blood sugar. (ECF No. 79-2, PageID.364). Plaintiff states that he was asleep. (Plf. Dep. at 26, ECF No. 79-1, PageID.355). Thus, it was necessary for prison custody staff to enter the segregation cell and to come into very close proximity with plaintiff in order to make determinations why plaintiff was not responding and whether he required immediate emergency medical attention. (ECF No. 79-3, PageID.369). A shield was placed between plaintiff and custody staff members for their protection. Plaintiff tried to sit up and became combative. (ECF No. 79-2, PageID.364-65). Although Sergeant Wilks is "not a very big officer" he put his weight on the shield attempting to keep plaintiff down. If he had tried to hold plaintiff down with his arms "he wouldn't have been able to do it[.]" Officer Kennedy tried to apply handcuffs, but only succeeded in getting the cuffs on plaintiff's right wrist. Plaintiff states that Kennedy pulled on his left arm while he was attempting to apply

---

[4]This type of "one-to-one staff monitoring" is a suicide prevention measure. *See Magnum v. Repp*, 674 F. App'x 531, 534 (6th Cir. 2017).

[5]*See also* Plaintiff's Brief at 3, ECF No. 91, PageID.457).

the handcuffs to plaintiff's left wrist.[6] Lieutenant Plichta stayed outside the cell and he never touched plaintiff. Plichta ordered that the handcuffs be removed and that custody staff exit the cell when it was apparent that plaintiff was indeed responsive. (Plf. Dep. at 27-32, ECF No. 79-1, PageID.355-56; ECF No. 79-2, PageID.365).

Plaintiff yelled out something to the effect of, "When I get out I'm going to come back and kill you. You don't know it but I got family that works here [sic] and I will get you." (ECF No. 79-2, PageID.366). On July 5, 2010, at approximately 9:20 a.m., Sergeant Kennedy charged plaintiff with the major misconducts of threatening behavior and insolence. (ECF No. 91-2, PageID.492). On July 23, 2010, Hearing Officer Jackson conducted a hearing on the charges. Jackson's misconduct hearing report noted that plaintiff said that he "took an overdose of insulin and his blood sugar was all messed up that day." (ECF No. 91-2, PageID.493). The hearing officer rejected plaintiff's claim that he did not know what he was saying or doing and found him guilty on both charges:

> 012 Hearing officer finds based on the statement of officer Kennedy that prisoner looked at him from about three feet away and stated, "I am going to kill your bitch ass". Hearing officer finds the words were directed at the officer and expressed an intent to injure or physically abuse. Charge sustained.
>
> 026 Hearing officer also finds that based on the statement of officer Kennedy that prisoner stated to reporter, "Eat dicks mother f____." Hearing officer finds the words were directed at the officer and intended

---

[6]This is a dangerous situation for custody staff because when a handcuff is only secured to one wrist, it can be used by the prisoner as a weapon. *See e.g., Bailey v. King*, No. 1:08-cv-542, 2010 WL 310309, at *4 (W.D. Mich. Jan 21, 2010).

only to degrade. Hearing officer finds insufficient evidence to show that
prisoner did not know what he was saying or doing[.]

(*Id.*). Hearing Officer Jackson sentenced plaintiff to "30 days loss of privileges." (*Id.*; *see also* Plf. Dep. at 52-53, ECF No. 79-1, PageID.360). On September 22, 2010, plaintiff's request for rehearing was denied. (ECF No. 91-2, PageID.491). Plaintiff conceded that his misconduct convictions have never been overturned. (Plf. Dep. at 53, ECF No. 79-1, PageID.360).

Medical records do not show that plaintiff suffered any significant injury stemming from his July 5, 2010, altercation with custody staff. Instead, the medical records document that plaintiff continued to receive almost constant medical attention. Plaintiff refused to allow his blood sugar to be checked at 10:15 a.m. (ECF No. 86-1, PageID.419). At 11:53 a.m. it was noted that officers reported that plaintiff had eaten his lunch. On this occasion and at 1:33 and 3:10 p.m., plaintiff allowed his blood sugar to be checked. (*Id.* at PageID.419-21). At approximately 4:05 p.m. on July 5, 2010, plaintiff allowed his blood sugar to be measured. A nurse noted that plaintiff had fine tremors in his hands, but he was otherwise alert and oriented. His color was good and his skin was warm and dry. Plaintiff was issued four packets of honey to use on a PRN basis. (*Id.* at PageID.422). An hour later, a nurse noted that plaintiff stated that he "took 100 u Lantus this AM, but doesn't want to talk about it." The nurse also recorded that custody staff reported that plaintiff ate 'all of [his] supper meal." (*Id.* at PageID.423). Plaintiff was far less cooperative when the nurse returned an hour later.

The medical progress note for 6:13 p.m., July 5, 2010, is set forth verbatim below:

> Per order from PA, to check inmates BS cell side Q hour during shift. Inmate lying on cot with hand over face in cell, had to bang on window to get inmates attention, inmate removed hand and said "I have a headache and you will not come over here and wake me up Q hour to check my sugar, what ya'll need to do is call the doctor because I need an IV I have done this before I know my body and whats wrong with it" I asked the inmate again to come to the door so I could check his BS and he said "NO". I asked him again and if he does not come to the door to check BS that he would be refusing. He said "NO" I then left Segregation.

(*Id.* at PageID.424). Plaintiff continued to refuse to have his blood sugar level monitored until approximately 9:05 p.m. (*Id.* at PageID.425-26).

At approximately 9:55 p.m., plaintiff began complaining of tight muscles in his lower back stemming from his altercation with custody staff. Medical care providers found no significant injuries. Plaintiff received an ice pack. Plaintiff reported that he ate all four honey packets that had been issued to him during the day. Plaintiff was informed that custody staff had additional honey packets available for use on a PRN basis if plaintiff reported low blood sugar. (*Id.* at PageID.427).

On July 6, 2010, at 6:55 a.m., plaintiff refused to take his insulin. Plaintiff stated that he wanted to check his own blood sugar. He had a glucometer and related that he "just needed a lancet." When the nurse gave plaintiff the lancet, he "walked away from the cell door yelling, 'You stupid ass bitch. You just got this job but you[r] about to lose it[.]" Plaintiff refused to give the nurse the blood sugar results. (ECF No. 86-1, PageID.428).

On July 9, 2010, plaintiff was transferred to another prison. (Plf. Dep. at 12, ECF No. 79-1, PageID.351). After his transfer and roughly ten days after the July 5, 2010, incident, plaintiff began claiming that he had suffered a variety of injuries. (ECF No. 86-1, PageID.431-37). Plaintiff claimed an even more expansive list of injuries at his June 1, 2016, deposition. (Plf. Dep. at 34-36, ECF No. 79-1, PageID.357). There is no medical evidence that plaintiff suffered any significant medical injury on July 5, 2010, much less that the injuries that he now believes were caused by that incident.

On November 25, 2013, plaintiff filed this lawsuit. (ECF No. 1).

## Discussion

### I. Excessive Force

Plaintiff alleges that defendants Wilks and Kennedy used excessive force against him in violation of his Eighth Amendment rights. As a prisoner incarcerated under a criminal conviction, plaintiff's principal substantive rights are guaranteed by the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Ingraham v. Wright*, 430 U.S. 651, 664 (1977). The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crimes. To establish a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause, the offending conduct must reflect an unnecessary and wanton infliction of pain. *See Ingraham*, 430 U.S. at 670. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251

(1986) ]: whether the force was applied as a good faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Plaintiff must satisfy both an objective and subjective test to establish a viable Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).

To meet the objective component, the prisoner must be subjected to a serious deprivation. *Wilson*, 501 U.S. at 298. The federal courts recognize that an Eighth Amendment claim based on the excessive use of force must allege more than a simple assault and battery. *See, e.g., Leary v. Livingston County*, 528 F.3d 438, 445 (6th Cir. 2008). To be sure, under *Hudson v. McMillian*, guards may not inflict an unjustified beating upon a prisoner and then seek to defend their actions by the lack of serious or life-threatening injuries. *See Wilkins v. Gaddy*, 559 U.S. at 36-38; *McHenry v. Chadwick*, 896 F.2d 184, 187 (6th Cir. 1990). By the same token, if the objective component of the Eighth Amendment is to mean anything, it cannot be satisfied by a mere unwanted touching. "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 559 U.S. at 37; *see Tuttle v. Carroll County Detention Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) (*per curiam*); *Lewis v. Guyette*, No. 1:09-cv-1086, 2011 WL 975451, at *2 (W.D. Mich. Mar. 17, 2011).

Plaintiff has not shown any serious deprivation. He resisted the guards who had entered his cell in an effort to discern why he was not responsive. There is no medical evidence supporting plaintiff's assertion that the injuries that he now claims were

caused by this incident. Plaintiff does not approach satisfying the objective component of an Eighth Amendment claim.

Plaintiff falls short of satisfying the subjective component of an Eighth Amendment claim. "In determining whether the use of force was wanton or unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. at 321). Plaintiff was housed in segregation for medical observation stemming from an apparent suicide attempt. He posed a serious threat to the safety of the guards entering the cell to determine why plaintiff was not responsive. He did not allow both of his hands to be restrained. Far more forceful responses would have been justified without violating the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Hursey v. Sherk*, No. 1:10-cv-1277, 2014 WL 70110, at * 5 (W.D. Mich. Jan. 9, 2014).

I find that no reasonable trier of fact could find on the present record that defendants Wilks and Kennedy acted maliciously and sadistically for the purpose of causing plaintiff serious harm. *See Hudson*, 503 U.S. at 7.

Plaintiff has conceded that Lieutenant Plichta never entered his cell. (Plf. Dep. at 13, 28, ECF No. 79-1, PageID.351, 355). Plaintiff argues that defendant Plichta failed to intervene in violation of his Eighth Amendment rights. (Plf. Brief at 3-4, 17-18, ECF No. 91, PageID.457-58, 471-72). An officer, who did not actively participate

in the events alleged, can be held liable for the use of excessive force if he owed the victim a duty of protection against the use of excessive force and failed to satisfy that duty. *See Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). To establish that defendant Plichta owed him a duty of care, plaintiff was required to demonstrate that defendant Plichta "observed or had reason to know that excessive force would be or was being used" and "had both the opportunity and the means to prevent the harm from occurring." *Id.* Plaintiff failed to present evidence that the incident lasted long enough for Plichta "to both perceive what was going on and intercede to stop it." *Id.* The evidence is that when it became apparent that plaintiff was responsive, Plichta directed that the handcuffs be removed from plaintiff's wrist and that custody staff exit the cell. (ECF No. 79-2, PageID.365). In addition, because plaintiff failed to present evidence sufficient to create a genuine issue of fact for trial on his Eighth Amendment claims against the defendants who had physical contact with him, he has no viable claim against defendant Plichta for failure to intervene. *See Ondo v. City of Cleveland*, 795 F.3d at 611.

## II. Deliberate Indifference

Plaintiff alleges that all three defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Cruel and Unusual Punishments Clause. The Eighth Amendment prohibits prison officials and doctors from showing deliberate indifference to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. at 104. A deliberate indifference claim "has objective and subjective components." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir.

2004). "The objective component requires the existence of a 'sufficiently serious' medical need." *Id.* (quoting *Farmer*, 511 U.S. at 834); *see also Broughton v. Premier Health Care Servs.*, 656 F. App'x 54, 56 (6th Cir. 2016). "The subjective component requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.' " *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). The prisoner must show that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

I find that plaintiff falls well short of raising a genuine issue of fact on either component.[7] Plaintiff was under one-on-one observation by custody staff and regular blood sugar level monitoring after his apparent July 5, 2010, suicide attempt. Plaintiff's argument that he did not receive medical attention until "11 or 12 hours" after the July 5, 2010, altercation with guards (Plf. Brief at 4, 18-19, PageID.458, 472-73) is untenable given the detailed medical records regarding the treatment that he received on the date in question.

---

[7]It is worth noting at this juncture that plaintiff is *not* claiming that his suicidal tendencies on July 5, 2010, satisfied the objective component and that defendants were deliberately indifferent to his serious medical needs by failing to monitor his blood sugar or act with sufficient dispatch to determine why plaintiff was not responsive.

## III. Supplemental jurisdiction

Plaintiff asks the court to exercise supplemental jurisdiction over his state-law claims. Under 28 U.S.C. § 1367, a district court has broad discretion to decide whether to exercise jurisdiction over state law claims." *Smith v. Erie County Sheriff's Dep't*, 603 F. App'x 414, 424 (6th Cir. 2015). "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008); *see also Smith, Lerner, Sampson & Rothfuss,* L.P.A., 658 F. App'x 268, 280 (6th Cir. 2016). I find no reason in this case to depart from the general rule.

### **Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motion for summary judgment (ECF No. 85) be granted and that judgment be entered in defendants' favor on all plaintiff's federal claims. I recommend that the Court, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's purported state law claims.

Dated:  August 11, 2017                     /s/  Phillip J. Green
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH.

LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).